UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ] <br> ] <br> ] |
| v. | ]     Criminal No. 19-CR-346 <br> ] <br> ] |
| ANDREW RODGERS | ]     Judge Amy Berman Jackson <br> ] |

**<u>SENTENCING MEMORANDUM</u>**

Defendant Andrew Rodgers, through undersigned counsel, respectfully submits the following memorandum in support of sentencing.

For the reasons stated below, pursuant to 18 U.S.C § 3553(a), Mr. Rodgers requests a sentence no greater than the mandatory 15-year sentence to which he pled guilty. Due to Mr. Rodgers' end-stage renal disease (ESRD), detailed below, this is likely, to be a life sentence without release. Given his insight and willingness to enter rehabilitation services while incarcerated for 15 years, the mandatory sentence is a fair maximum sentence. This mandatory 15-year sentence is appropriate in relation to all of the circumstances of the case.

1

### *I. Considerations in Imposition of Sentence*

The Federal sentencing statute, 18 U.S.C. § 3553(a), requires that this Court impose a sentence that is ". . . sufficient but not greater than necessary" to comply with the purposes of sentencing as set forth in 18 U.S.C. §3553(a).

In United States v. Booker, 543 U.S. 220 (2005), the U.S. Supreme Court held that the U.S. Sentencing Guidelines are advisory only - not mandatory.   In Rita v. United States, 551 U.S. 338,351 (2007), the Supreme Court further explained that "...the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines should apply."  The court can no longer presume that a Guidelines sentence is the appropriate sentence.  To do so would be to take a large step in the direction of returning to the pre-Booker regime.  United States v. Pickett, 475  F.3d 1347 (D.C. Cir. 2007).

While this Court must still correctly calculate the guideline range, Gall v. United States, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, id. at 51; Nelson  v. United States, 555 U.S. 350, 352 (2009), but must treat it as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a).  Kimbrough v United States, 552 U.S. 85, 90 (2007).  The Court must "consider all of the § 3553(a) factors," "make an  individualized assessment based on the facts presented," id. at 49-50, and explain how the facts  relate to the purposes of sentencing.  Id. at 53-60; Pepper v. United States, 131 S. Ct. 1229, 124243 (2011).  The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater  than necessary' to accomplish the goals of sentencing."  Id. at 101; Pepper, 131 S. Ct. at 1242-43.

A key component of Supreme Court law, designed to ensure that the guidelines are truly advisory and constitutional, is the authority of this Court to disagree with a guideline as a matter of policy.  Because "the Guidelines are now advisory . . . , as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." Kimbrough, 552 U.S. at 101-02 (internal punctuation omitted)(citing Rita v. United

States, 551 U.S. 338, 351 (2007)(district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").  As the Supreme Court held in Kimbrough, because "the cocaine Guidelines, like all other Guidelines, are advisory only," it "would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case."  Kimbrough, 552 U.S. at 91, 109-10; see also Spears v. United States, 555 U.S. 261, 267 (2009) ("[D]istrict courts are entitled to vary from the crack cocaine Guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range.").

The factors under 18 U.S.C. section 3553(a) to be considered in imposing a sentence that is sufficient but not greater than necessary to comply with the purposes of section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the advisory guidelines range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

## II.  Sentencing Factors under 18 USC § 3553

The factors below relate to the appropriate sentence of the Court given the circumstances of the case.

### A.  *Summary of Factors Compelling Variance Below the Guidelines*

Given the factors detailed below, the advisory guideline range is unnecessary for protection of the community or punishment:

- Mr. Rodgers has early and fully accepted responsibility;
- Mr. Rodgers' illness (end-stage renal disease), means that his sentence will have a far more deleterious impact on him than on other defendants, and his likelihood of living beyond his period of incarceration is low;
- Mr. Rodgers' tragic family background should be considered in fashioning a sentence;
- Mr. Rodgers fully supports rehabilitation;
- The U.S. Sentencing Guidelines level for this offense has been rejected by Courts, and is not supported by empirical evidence;
- A comparison of this case to other cases in this jurisdiction shows that only a below-Guidelines sentence would avoid sentencing disparity.

### B.  *Full and Early Acceptance of Responsiblity*

Mr. Rodgers had requested to plead guilty since his initial appearance.  He waived his right to a preliminary hearing.  He also waived his Speedy Trial Act rights to indictment, as well as right to trial - literally for months - while awaiting the goverment's investigation prior to extending a plea offer.

Mr. Rodgers continued his preliminary hearing on June 4, June 18, July 12, August 8, and September 11, to allow the government to fully investigate the case prior to extending a plea offer. The government did not learn of any additional minors or offenses during their extended investigation, and made a plea offer, below, which he accepted.

He accepted the plea offer to all of the charges, including receipt of child pornography, and 2 counts of First Degree Child Sex abuse under DC Code. The plea agreement requires that he be sentenced to spend a minimum of the next 15 years in prison. No counts were eliminated or reduced in exchange for his early plea and waiver of rights.

His plea spared the minors, government and court the requirement of grand jury testimony, lengthy discovery, and what would have been a lengthy and emotional trial.

This plea requires Mr. Rodgers to be sentenced to a minimum 15 years incarceration - a very serious and substantial period of incarceration - especially considering his chronic medical condition.

    C.    *Sentencing Guidelines Range and Recommendations*

    1.    **18 USC § 2252(a)(2) violation - Receipt of Pornography**

Mr. Rodgers pled guilty to possession of child pornography, in violation of 18 USC § 2252(a)(2). The statutory mandatory minimum sentence is 15 years incarceration after a previous conviction of sex abuse of a minor. The Probation Office has calculated the Guidelines offense level as 31. At criminal history level V, the Guidelines range is 168 to 210 months, or a minimum 14 years incarceration. But due to his prior conviction, he must be sentenced to a minimum of 180 months, or 15 years incarceration.

There is absolutely no indication that Mr. Rodgers took pornographic images of the minors, or posted pornography. The pornography plea is solely related to obtaining images from the internet.

Mr. Rodgers was not in the business of making or distributing pornography.

The U.S. Sentencing Guidelines also incorporate the DC Code convictions in the plea

agreement by increasing his offense level by 5 points. Presentence Report (PSR) ¶ 44. In addition, under the Guidelines, his 1997 conviction for a child sex offense has increased his Criminal History category from II, consistent with a 20-year old conviction, to V. PSR ¶ 60. The 1997 conviction, and DC Code convictions in the plea agreement for child sex abuse in this case, act as U.S. Guidelines multipliers in his plea to receipt of child pornography.

Particularly given that the images were not distributed, the Sentencing Guidelines are clearly not consistent with the sentencing factors under 18 USC § 3553, and a variance is warranted for the charge.

2. **22 DC Code §§ 3008, 2020(a)(1) - first degree child sex abuse**

Mr. Rodgers also pled guilty to two counts of first degree child sex abuse, concerning one minor, aged 9, and another minor, aged 8. 22 DC Code §§ 3008, 2020(a)(1). The Probation Office and the parties agree that Mr. Rodgers' offense level under the DC Guidelines is offense level 3, criminal history C, for a Guidelines range of 114 to 306 months.

It is important, again, to note that the U.S. Sentencing Guidelines already account for those offenses in the U.S. Guidelines offense level. Mr. Rodgers received 5 additional offense level points for the sex offense charges. PSR ¶ 44 - pattern of activity. In other words, under the U.S. Sentencing Guidelines, he received a total offense level of 31 rather than 26 due to the DC Code violations.

3. **Government Sentencing Recommendation**

The Government's plea letter anticipated a higher total US Guidelines offense level - total offense level 33, rather than the Probation Office's total calculation of offense level 31. This is because Mr. Rodgers' conduct was limited to receipt of child pornography, yielding a 2-point reduction in offense level, as calculated by the Probation Office. PSR ¶ 42. This reduction was not included in the plea letter. The Guidelines range, given Mr. Rodgers criminal history, is actually 180 - 210 months (including the mandatory minimum 15-year sentence), rather than the plea letter's estimated range of 210-262 months. In fact, the Guidelines range for a person at offense level 31, History Category V, is 168 to 262 months, but the Probation Office incorporated the

mandatory minimum sentence - <u>180</u> months - into the Guidelines calculation for the offense, further increasing the offense level.

While the government limited its allocution to a maximum sentence of 324 months, counsel submits this number was the bottom of the Guidelines range for the combined US and DC offenses as calculated in the plea letter (US Guidelines - 210 months, plus DC Guidelines - 114 months = 324 months).  Given the Guidelines as calculated by the Probation Office, a sentence at the low end of the Guidelines would actually be **294 months**.  (US Guidelines - 180 months, plus DC Guidelines - 114 months = 294 months).

4. **Probation Office Recommendation**

The Probation Office followed the government's plea letter's maximum sentencing recommendation of 324 months incarceration, but without the government's logic that the sentence reflect the minimum Guidelines sentence.  The defense submits that, given the correction by the Probation Office, a sentence of 324 months incarceration is not logically related to sentencing considerations.  (The Probation office recommended US Guidelines - 180 months, plus DC Guidelines - *144* months, for a total 324 months incarceration.  While recommending the bottom of the U.S. Guidelines for the US count, it recommended *144* months, rather than the low-end Guidelines range of *114* months, for the DC counts.)

D. *Family History*

Mr. Rodgers has a tragic family history.   He never knew his father, and his mother was a drug addict, who passed away in approximately 1998.  Mr. Rodgers was left in the care of other family members who were quite abusive, as relayed in the probation report.  Mr. Rogers never received the basic parenting necessary to understand how to navigate society - in fact, he received only negative lessons.  He left the family home at age 14, and suffers from post-traumatic stress disorder (ptsd).

### E.   *Rehabilitation*

Post-arrest rehabilitation is an important consideration in sentencing under 18 USC § 3553, and can be a basis for variance from the Guidelines.  See  Pepper v. United States, 562 U.S. 476, 504-5 (2011)(under the factors of 18 USC § 3553, post-conviction rehabilitation may support a downward variance from the Sentencing Guidelines range).  In Pepper, supra, the defendant received a downward variance from the U.S. Sentencing Guidelines at his resentencing, due to his extensive rehabilitation efforts after his original sentence.  The U.S. Supreme Court stated that post-conviction rehabilitation may be a basis for downward departure, based on its analysis of the sentencing factors under section 3553.  The Court stated that a defendant's rehabilitation can be an important factor in sentencing under section 3553 in a number of ways:  For example, evidence of rehabilitation:

> "...may also be pertinent to "the need for the sentence imposed" to serve the general purposes of sentencing set forth in § 3553(a)(2) --in particular, to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training . . . or other correctional treatment in the most effective manner." §§ 3553(a)(2)(B)-(D); see McMannus, 496 F.3d, at 853 (Melloy, J., concurring) ("In assessing . . . deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post-incarceration conduct"). Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to "impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a)(2)."
>
> Pepper, supra, at 491.

First, Mr. Rodgers sought an early plea, evidencing remorse and rehabilitation.  He has consistently stated that he wants to participate in the Sex Offender Treatment Program - Residential (SOTP-R) at FMC Devens (Massachusetts).  This program is voluntary, and will prepare Mr. Rodgers for release while incarcerated, as has not previously occurred.  His only intensive sex

offender program was after his 2006 release from prison.[1]

With supervision from the Probation Office, Mr. Rodgers can be successful on probation or supervised release. When he was released from prison in 2006 he entered the sex offender program, and was able to successfully complete parole. (There is also no evidence that he committed offenses while on required registration, which ended in approximately 2017.)

It is significant that in 1997, the Augustine Institute opined, based on their examination, that he could be treated under conditions including both individual and group therapy for 24 - 36 months. The evaluator also recommended evaluation for pharmaceutical intervention, as necessary, and close supervision.

In 1999, an evaluation was conducted by the DC Department of Human Services. The evaluator seconded an evaluation for chemotherapy. She stated that, "his current supervision with the Court Services and Offender Supervision Agency (CSOSA) are appropriate, as are the conditions of his probation." She recommended polygraph testing, in addition to the supervision provided by CSOSA. Mr. Rodgers was later revoked for technical violations, including monitoring violations and self-reported visits to locations where children resided.

Upon his release from prison in 2006, including more intensive treatment, he successfully completed parole. Unfortunately, he did not have the funds necessary to continue sex offender treatment after his parole terminated.

Mr. Rodgers has been candid concerning his diagnosis, and the need for more treatment - to both the Probation Office and the most recent psychologist, whose evaluation was shared with the Probation Office and the government. Attached Exhibit A - filed under seal. The psychologist recommended intensive treatment in the Residential Sex Offender Treatment

---

[1] The Probation Office notes Mr. Rodgers' particpation in that program, but lists the date as 1997. Mr. Rodgers was incarcerated from January, 1997 to October, 1998. He was revoked approximately 6 months later for technical violations for not properly using his ankle monitor, and for self reporting that he was in a residence where children were resided. He was not re-arrested. He entered the program after his release in July, 2006, and his parole expired succesfully in August, 2007.

Program (SOTP-R), while Mr. Rodgers is incarcerated. She stressed that the program is empirically based. In addition to addressing his sex offender treatment needs, the program can also address his symptoms of PTSD (post-traumatic stress disorder), based on childhood trauma, and to process his history of abuse. She also recommended an evaluation to determine if psychotropic medication is appropriate.

The evaluator stressed that when released, Mr. Rodgers will require another assessment, and intensive monitoring, sex offender registration, medication management and psychotherapy - with ongoing assessments. Whenever he is released, he can be subject to lifetime parole, where his needs can be evaluated and addressed.

### G.  *Medical Condition*

Incarceration is especially difficult for Mr. Rodgers because he is 48 years old, and has end-stage renal disease (ESRD), requiring dialysis three times per week, substantially lowering his life expectancy. According to the American Kidney Foundation, average life expectancy on dialysis is 5-10 years, although individual cases vary. Https://www.kidney.org/atoz/content/dialysisinfo. Mr. Rodgers started kidney dialysis approximately 15 years ago, with a diagnosis of end stage renal disease approximately 10 years ago. He had a kidney transplant in 2015, with a kidney rejection 2018, requiring him to return to dialysis.

He cannot be expected to receive quality medical care while in prison for this chronic disease.

For black males born in 2013, life expectancy is 71 years. And according to a research article published in the American Journal of Public Health, there is a 2-year decline in life expectancy for every year served in prison. The Dose–Response of Time Served in Prison on Mortality: New York State, 1989–2003, American Journal of Public Health, Evelyn J. Patterson PhD, February 06, 2013. This does not account for Mr. Rodgers' end stage renal failure upon entering the prison. He is presently 48 years old, and if the recommendation of the Probation Office of 324

months - 24 years incarceration - is followed, there is no reason to believe that Mr. Rodgers would ever be released from prison. Even considering good time, he would have to live to approximately age 70 - only one year below the life expectancy for black males <u>without</u> renal failure - to be released.

Even if Mr. Rodgers were released after a 294-month sentence - 24.5 years, he would be incarcerated until at least approximately age 68, including consideration of good time - well after the life expectancy of someone suffering from end stage renal failure.

H.   *Sentencing Disparity in relation to Other Cases*

18 USC § 3553 requires the Court to compare the circumstances and sentences of other cases and defendants. A comparison with other cases shows that a sentence which is far below the minimum Guidelines sentence is compelled here.

1.   **Disparity with other Sex Act Cases, Nationally**

According to the U.S.S.G. Sourcebook of Federal Sentencing Statistics, 2018, Table 32, page 91, a whopping 71 per cent of persons sentenced under USSG § 2G2.2 received a below-Guidelines sentence. (Of 1414 persons sentenced under § 2G2.2, 888 received a variance below Guidelines, 88 received a departure, and 27 received a § 5K departure.) Clearly, the Sentencing Guidelines regarding USSG § 2G2.2 are not followed by the Courts, and a fair sentence under the factors of 18 USC § 3553 includes a variance for the factors above.

2.   **Comparative District of Columbia Cases.**

Below are comparative cases for sentencing. To counsel's knowledge, these cases did not involve the chronic health condition suffered by Mr. Rodgers.

*<u>United States v. Lewis, 09-CR-213,          20-year sentence</u>*

This case was clearly much more serious than Mr. Rodgers's case, for a number of reasons. Four young minors were involved, including a 13-year old who he prostituted for 3 years, and a 12-year old who he prostituted for 2 years, while he was her ***FOSTER PARENT***. He personally had sex with both of these minors. He kept a handgun in the house, and would hit the 13-year old.

The charges also included a 16-year old who he threatened to kill if he didn't receive all the money she obtained from prostitution, and a 14-year old who he prostituted until he was arrested, 3 days after she started.

Mr. Lewis was 43 years old, and was was charged with sex trafficking by fraud, force, or coercion.   His Guidelines range was 360 months to life.   The government agreed to a Rule 11(c)(1)( C) plea for 15-20 years incarceration.

### *United States v. Urlick, 16-cr-79,                8 ½ year sentence*

Mr. Urlick had a 15-year old live with him for a month, until arrested.   He had intercourse with her while knowing her age, beat her at times, and took pornographic photos of her.   He pled guilty to an 8 ½ year sentence under Rule 11(c)(1)( C).

### *United States v. de la Rocha, 15-cr-94,         22-year sentence*

Mr. de la Rocha lived with his girlfriend and her daughter.  He chronically sexually abused the daughter at their home for approximately 2 years, beginning at age 12, and took videos of his abuse without the minor's knowledge. The abuse was discovered by the child's mother, who found a video of the pornography.  His Guidelines for the pornography count was 360 months to life. He was sentenced to a total 22 years incarceration for all counts after a guilty plea.   (The government requested 24.3 years incarceration for the Federal pornography count, and 7 ½ years, consecutive,  for the DC code count of first degree child sexual abuse.)

### *United States v. Best, 15-cr-22,                18-year sentence*

Mr. Best, who was 45 years old, used his position of authority as a pastor and MPD Police officer to sexually abuse 2 minor girls at his church and at MPD headquarters.  He also took pornographic photos of them, and asked them to send him pornographic photos, which were refused.  He pled guilty to an 18-year sentence under Rule 11(c)(1)( C).

### *III.  Conclusion*

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  Gall v. United States, 552 U.S. 38,52  (2007) citing Koon v. United States, 518 U.S. 81, 113 (1996).

Given Mr. Rodgers's acceptance of responsibility, desire to enter rehabilitation, and the dire state of his health, the mandatory sentence of 15 years incarceration, concurrent for all counts, is sufficient in this case to protect the public and afford just punishment.

Respectfully submitted,

_____/s/_____

Joanne D. Slaight, #332866
400  7th Street, N.W.,  Suite 206
Washington, DC  20004
Phone (202) 408-2041
Email:   jslaight@att.net